UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

       Plaintiff,                    CIVIL ACTION NO. 06-13313

    vs.                                DISTRICT JUDGE AVERN COHN
                                    MAGISTRATE JUDGE DONALD A. SCHEER

JAMES FREEBURN,

       Defendant,
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: Defendant's Motion for Summary Judgment should be GRANTED as Plaintiff has failed to establish any violations of his federally secured constitutional rights.

\* \* \*

Plaintiff, while a prisoner at the G. Robert Cotton Correctional Facility (JCF), in Jackson, Michigan[1] was allowed to proceed in forma pauperis and filed the instant Complaint, pursuant to 42 U.S.C. § 1983, on July 21, 2006, against Defendant Freeburn, who is a corrections officer at JCF. Plaintiff accuses the defendant of violating his constitutional rights by retaliating against him for exercising his right to file lawsuits and grievances against prison officials. Retaliation allegedly took the form of opening his legal mail outside his presence, keeping him waiting for 90 minutes before allowing him to meet with a visitor, and strip searching him before allowing him to use the restroom. Claiming a violation of his First Amendment right to meaningful access to the courts and intentional

---

[1] Plaintiff is still incarcerated at JCF.

infliction of emotional distress, Plaintiff sought injunctive relief as well as compensatory and punitive damages.

Defendant filed a Motion for Summary Judgment on November 16, 2006, asserting that Plaintiff had failed to establish any violations of his federally secured constitutional rights. Plaintiff filed a response to Defendant's Motion for Summary Judgment on December 12, 2006, arguing to the contrary. For the following reasons, I recommend that Defendant's motion be GRANTED.

STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); see Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. Id. A mere scintilla of evidence is

insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits.  Ashbook v. Block, 917 F.2d 918, 921 (6th Cir. 1990); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

## DISCUSSION

To establish a valid claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights privileges or immunities secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42, 49 (1988). Here, Defendant does not dispute that he acted under color of state law.  Accordingly, I will focus on the alleged constitutional deprivations.

## INTERFERENCE WITH INCOMING MAIL

A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. See Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992). As the Sixth Circuit has noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). However, prison officials who open and read

incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. See Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986).

When the incoming mail is "legal mail," courts have heightened concerns with allowing prison officials unfettered discretion to open and read an inmate's mail.  A prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts ...."); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail....").

In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In Knop, the Sixth Circuit addressed an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence. Knop v. Johnson, 977 F.2d at 1012.  The court found that the opt-in system was constitutionally sound as long as prisoners received written notice of the policy, did not

have to renew the request upon transfer to another facility, and were not required to designate particular attorneys as their counsel. Id.

However, not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. In Sallier v. Brooks, 343 F.3d 868 (6th Cir. 2003), the court found that mail from legal sources having little or nothing to do with safeguarding a prisoner's access to the courts, or protecting an inmate's relationship with an attorney, could be opened outside the presence of a prisoner. The Sallier court specifically ruled, for instance, that mail from county clerks, registers of deeds or bar associations were not entitled to special handling by prison officials because such correspondence generally did not contain confidential, personal or privileged material. Id. at 876. The Sallier court emphasized that the only mail that qualified as "legal mail", entitling it to First Amendment protection, was correspondence sent by courts or attorneys at law. Id. at 877-878. (We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights).

In the instant case, Plaintiff has not shown an intentional interference with his constitutional rights by the handling of his legal mail. Plaintiff stated in the complaint that the opened envelope contained docket sheets for a lawsuit that he had previously filed against prison officials (Complaint at ¶16). Plaintiff acknowledged, however, that he received the docket sheets in a timely fashion. Furthermore, the Plaintiff's complaint that the Defendant failed to follow prison policy when handling his mail is also without merit. The law is clear that in order to make out a claim under §1983 a Plaintiff must prove a violation of a federally secured right, and failure to follow a policy directive does not rise to

the level of a constitutional violation because a policy directive does not create a protectable liberty interest. Roberts v. City of Troy, 773 F.2d 720, 726 (6th Cir. 1985) (citing Davis v. Scherer, 436 U.S. 658, 694 (1984); Barber v. City of Salem, 953 F.2d 232, 240 (6th Cir. 1992)(holding that failure to comply with an administrative rule does not by itself give rise to a constitutional violation).

If the court were to deem the mishandling of Plaintiff's mail a constitutional violation, no monetary damages could be recovered without a showing of an actual injury in a specific case. Lewis v. Casey, 518 U.S. 343, 351 (1996). The actual injury requirement is not satisfied by any type of frustrated legal claim, but must be connected to pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under § 1983 to vindicate "basic constitutional rights". Id. at 352-353. Plaintiff has pointed to no denial of any motion, or dismissal of any complaint or petition as a result of the alleged violation. Additionally, the doctrine of immunity would dictate that no monetary damages would be recoverable against the Defendant without a more definite showing of personal involvement. Poe v. Hayden, 853 F.2d 418, 423 (6th Cir. 1988). Having neither suffered nor alleged a remediable harm, Plaintiff has failed to allege a compensable constitutional violation. Accordingly, Defendant's motion as it relates to Plaintiffs' access to courts claim should be granted.

CLAIM OF RETALIATION

There are two categories of retaliation claims--general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific constitutional rights. In Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1989) the Sixth Circuit clarified the elements of each category and supplanted previous cases that had blurred the

lines between the two.  General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment.  To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." Id. at 387.   In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate while holding a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him.   See Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right.  In such cases, an inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct. Thaddeus-X, 175 F.3d at 394-395. Plaintiff has the burden of proving all three elements.

Even if it is assumed, without deciding, that Plaintiff satisfied the first two elements listed above, he has failed to allege sufficient facts that establish the third. He must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See Mt. Healthy City School Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 287 (1977).  He has done nothing more than simply allege retaliation without establishing a causal connection. See Thaddeus-X, 175 F.3d at 399-400.

RETALIATION IN THE FORM OF HARASSMENT

Plaintiff asserts that he was forced to wait approximately 90 minutes before being allowed to meet with a visitor (Complaint ¶19). The Complaint also contains various allegations that the defendant verbally harassed Plaintiff, and that he subjected Plaintiff to a strip search before allowing him to use a restroom (Complaint ¶23).

The general rule is that mere threats, abusive language and verbal harassment are insufficient to state a constitutional claim for relief under § 1983.  Ivey v. Wilson, 832 F.2d 950, 954-955 (6th Cir. 1987); Freeman v. Trudell, 497 F.Supp. 481 (E.D. Mich. 1980); Rahman v. Stephenson, 626 F.Supp. 886, 888 (W.D. Tenn. 1986).  Contrary to Plaintiff assertion, he was not forced to wait an unreasonable amount of time before being allowed to meet with a visitor. According to a visitor log submitted by prison officials, Plaintiff's visitor waited less than an hour before meeting with him (See Visitor Log, attached as Exhibit A to Defendant's Motion for Summary Judgment). Given the number of other visitors to the prison that day, there is no evidence that any delay in arranging the visit was motivated, even in part, by the inmate's protected conduct.  Moreover, Plaintiff acknowledged that  Defendant conducted a strip search in accordance with prison policy before allowing him to enter the visiting room, or use the restroom following his meeting with the visitor (Complaint ¶22).

MENTAL ANGUISH

Plaintiff seeks compensatory and punitive damages due the to mental anguish he suffered as a result of the defendant's alleged retaliatory conduct. The Prison Litigation Reform Act specifically prohibits monetary damages solely for emotional distress.

**8**

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a showing of physical injury.
>
> 42 U.S.C. § 1997e(e)

The Complaint alleges only emotional injuries stemming from the defendants' alleged misconduct. Since Plaintiff has not alleged any physical injuries, his claim for monetary damages is barred by § 1997e(e). Accordingly, the Defendant's Motion for Summary Judgment should be granted and the instant Complaint dismissed.

The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Cohn's acceptance thereof is waived.

> s/Donald A. Scheer
> DONALD A. SCHEER
> UNITED STATES MAGISTRATE JUDGE

DATED: March 16, 2007

___

### CERTIFICATE OF SERVICE

I hereby certify on March 16, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 16, 2007. **James Scott.**

> s/Michael E. Lang
> Deputy Clerk to
> Magistrate Judge Donald A. Scheer
> (313) 234-5217